[No. E009993. Fourth Dist., Div. Two. Aug. 26, 1993.]

GAI THOMPSON, Plaintiff and Appellant, v.
CITY OF LAKE ELSINORE, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Facts and Procedural History and Discussion part I (in its entirety) and subparts C.1.a., C.1.b., C.2.b. and C.3. of part II.

**COUNSEL**

Richard L. Keller for Plaintiff and Appellant.

Harper & Burns and John R. Harper for Defendant and Respondent.

**OPINION**

**DABNEY, Acting P. J.**—Plaintiff Gai Thompson (owner) sued the defendant City of Lake Elsinore (the City), the building department, the city

council, and other individuals (all defendants referred to collectively as defendants), for damages allegedly resulting from the City's failure to issue a building permit and its failure to issue a certificate of occupancy for owner's renovated building after the final approval of the renovation. The trial court sustained defendants' demurrers without leave to amend. Owner appeals.

## FACTS AND PROCEDURAL HISTORY*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISCUSSION

### I.   *First Amended Complaint**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### II.   *Third Amended Complaint*

#### A.   *Allegations of the Complaint*

The third amended complaint attempted to state causes of action for negligence and failure to perform a mandatory duty. We accept as true all the material factual allegations of the complaint.

The third amended complaint alleged in pertinent part: The acts of all the defendants were done under color of law, ordinance, regulation and policy of the City, and under the authority of their offices as City officials or employees. Individual defendant Kevin Shear was the chief building official of the building department. He had final authority to establish, implement, and enforce municipal ordinances. Individual defendant Nelson Miller was the community development director, who also had "final authority" to "establish, implement and/or enforce" the ordinances in question. Individual defendant Ron Molendyk was the city manager, with responsibility to resolve conflicts between the building department and the public. He had "ultimate authority" to ensure "fair, equitable and equal application" of City ordinances, codes and regulations. Individual defendant Leon J. Strigotte was the mayor, "vested with ultimate authority to resolve disputes between members of the general public and various city departments, including the Building Department." He presided over owner's "appeal" of the denial of her certificate of occupancy. Owner alleged that all the defendants directed, controlled and ratified each other's acts.

*See footnote, *ante,* page 49.

Owner applied to the City for a building permit for the subject property on August 15, 1986. City denied the permit until January 16, 1987. Owner complied with all the appropriate building codes, regulations and requirements in completing her renovation. Defendants issued a "Final Inspection Okay" on April 24, 1987.

"Defendants, and each of them," refused to issue a certificate of occupancy for the premises, however. Owner could not use her building for any "practical, gainful or useful purpose" without the certificate of occupancy. Owner alleged that "Defendants, and each of them," refused to issue the certificate of occupancy "by reason that the Defendants intended to and did hold the subject premises for 'ransom' in an attempt to cause [owner] to comply with Defendants['] wishes, demands and instructions concerning" owner's other properties.

The first cause of action was alleged to be one for negligence under Civil Code section 1714 and Government Code section 815.2. Owner alleged that all defendants (by name) were negligent in failing to issue her a building permit, even though she had duly requested one and it was "owed" to her. Defendants were also negligent in failing to issue the certificate of occupancy, even though owner repeatedly requested it, she was entitled to it, and she had complied with all prerequisites for its issuance. Specifically, owner alleged that City ordinance (adopting the Uniform Building Code) required that " 'After final inspection when it is found that the building or structure complies with the provisions of this Code, the Building Official shall issue a Certificate of Occupancy.' " (Italics deleted.) Owner alleged that defendants thus had an affirmative duty to issue the certificate of occupancy.

The second cause of action purported to be one for failure to discharge a mandatory statutory duty under Government Code section 815.6. Owner alleged that, "Defendants, and each of them," knew that owner had fully complied with all requirements of her renovation, including the Uniform Building Code requirements, by April 24, 1987. She asserted that Defendants thereafter had a mandatory duty to issue her a certificate of occupancy for her building. Defendants' issuance of a "Final Inspection Okay" for the premises in effect admitted and confirmed that owner had complied with all requirements.

B. *Demurrer*

Defendants demurred on the grounds that owner failed to allege a statutory basis for governmental entity or governmental employee liability, and that defendants were immune from liability under Government Code sections 818.4 and 821.2. Moreover, the "ministerial statutory duty" the third

amended complaint alleges defendants failed to discharge was apparently solely the issuance of the building permit or certificate of occupancy under the Uniform Building Code. Defendants asserted statutory immunity for their decisions in issuing or not issuing the requested permits, certificates or licenses (Gov. Code, §§ 818.4, 821.2).

In response, owner asserted the specific statutory source of duty was City ordinance (i.e., the Uniform Building Code). Owner asserted that, under the particular language of the Uniform Building Code provisions at issue, the decision whether or not to issue the certificate of occupancy was not discretionary, but mandatory.

C. *Analysis*

On appeal, owner again urges that "the duty involved was mandatory and not discretionary."

1.a., b.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

2. *Failure to Discharge a Mandatory Duty—Government Code Section 815.6*

■ Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Thus, "Government Code section 815.6 contains a three-pronged test for determining whether liability may be imposed on a public entity: (1) an enactment must impose a mandatory, not discretionary, duty (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 907-909 [136 Cal.Rptr. 251, 559 P.2d 606]); (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability (see *Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610, 619-620 [188 Cal.Rptr. 205]; *Hecton* v. *People* ex rel. *Dept. of Transportation* (1976) 58 Cal.App.3d 653, 656 [130 Cal.Rptr. 230]); and (3) breach of the mandatory duty must be a proximate cause of the injury suffered. (See *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 707-708 [141 Cal.Rptr. 189]; see generally Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) §§ 2.41-2.48, pp. 93-107.)" (*State*

*See footnote, *ante*, page 49.

*of California* v. *Superior Court* (*Perry*) (1984) 150 Cal.App.3d 848, 854 [197 Cal.Rptr. 914].)

### a. *Mandatory or Discretionary Duty*

Does the Uniform Building Code, as adopted by ordinance, prescribe a mandatory duty to issue a building permit or a certificate of occupancy? Defendants argue that the Uniform Building Code provisions do not prescribe any mandatory duty; rather, the issuance of building permits and like certificates is precisely the sort of discretionary decision for which immunity is expressly provided by Government Code sections 818.4 and 821.2.

Leaving aside for the moment the question of the certificate of occupancy, it appears that defendants are correct with respect to issuance of the *building permit*.

*Burns* v. *City Council* (1973) 31 Cal.App.3d 999 [107 Cal.Rptr. 787], is the leading case. There, the plaintiff had a commitment for financing and the right to purchase certain lots zoned for single-family dwellings. The plaintiff had plans for a development on 30 of the lots. The plaintiff alleged that the plans complied with all existing codes, ordinances, rules and regulations of the city for such a development, but the city denied the building permit. The plaintiff sued for damages. The city's demurrer was sustained and the plaintiff appealed. The plaintiff urged that the act of issuing the building permit was ministerial, not discretionary, because the plaintiff's proposed development complied with all applicable requirements. The appellate court rejected the plaintiff's contention. Government Code sections 818.4 and 821.2 specifically provided immunity for issuing or refusing to issue a permit, license or other authorization. The public employee or entity was "authorized to determine" whether or not to issue the permit; there was no mandatory duty to do so. Thus, even if the entity or building inspector was negligent or erred in failing to issue the building permit, the immunity applied.

Other courts have followed *Burns* in holding that the decision whether or not to issue a building permit is the sort of discretionary decision covered by Government Code sections 818.4 and 821.2. (See *Slagle Constr. Co.* v. *County of Contra Costa* (1977) 67 Cal.App.3d 559, 565 [136 Cal.Rptr. 748]; *Friedman* v. *City of Los Angeles* (1975) 52 Cal.App.3d 317, 322 [125 Cal.Rptr. 93]; see also *Cancun Homeowners Assn., Inc.* v. *City of San Juan Capistrano* (1989) 215 Cal.App.3d 1352 [264 Cal.Rptr. 288] [city immune for negligent issuance of grading permit without obtaining "required" soils compaction report].)

Owner does not seriously dispute that the decision not to issue (delay in issuing) the building permit, as opposed to the occupancy certificate, was discretionary, and that defendants are immune therefor. She conceded the point below. Accordingly, to the extent the causes of action for negligence and failure to discharge a mandatory duty rested upon the failure to issue the building permit, the point has been abandoned.

With respect to the failure to issue the certificate of occupancy, defendants argue that the logic of *Burns* v. *City Council, supra,* 31 Cal.App.3d 999, applies, and they are immune. Defendants suggest that the language of the ordinance dealing with issuance of the certificate of occupancy parallels in all relevant aspects the language of the ordinance dealing with issuance of building permits; if defendants are immune for the latter, the same result should hold for the former.[9]

Owner fails to come to grips with defendants' contention, instead relying on the use of the word "shall" in section 307 of the Uniform Building Code to show that the section is "mandatory." ■ As a number of cases make clear, however, the use of the word "shall" does not necessarily mean that a mandatory duty is indicated. Not "every statute which uses the word 'shall' is obligatory rather than permissive. Although statutory language is, of course, a most important guide in determining legislative intent, there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion." (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 910-911, fn. 6 [136 Cal.Rptr. 251, 559 P.2d 606].)

The Supreme Court has noted that "there is no simple, mechanical test for determining whether a provision should be given 'directory' or 'mandatory' effect. 'In order to determine whether a particular statutory provision . . . is

---

[9]Section 303 of the Uniform Building Code as adopted by the City addresses the issuance of *building permits*: "The applications, plans, specifications, computations and other data filed by an applicant for permit shall be reviewed by the building official. Such plans may be reviewed by other departments of this jurisdiction to verify compliance with any applicable laws under their jurisdiction. *If the building official finds that the work* described in an application for a permit *and the plans*, specifications and other data filed therewith *conform to the requirements of this code* and other pertinent laws and ordinances, and that the fees specified in Section 304 have been paid, he *shall* issue a permit therefor to the applicant." (Italics added.)

Section 307 of the Uniform Building Code as adopted by ordinance deals with issuance of the *certificate of occupancy*: "(a) Use or Occupancy. No building or structure . . . shall be used or occupied . . . until the building official has issued a Certificate of Occupancy therefor as provided herein. . . . [¶] (b) . . . [¶] (c) Certificate Issued. After the final inspection *when it is found that the building or structure complies* with the provisions of this code and other laws which are enforced by the code enforcement agency, the building official *shall* issue the Certificate of Occupancy . . . ." (Italics added.)

mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. [Citation.] When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose [citation]. . . .'" (*Morris* v. *County of Marin, supra,* 18 Cal.3d 901, 909-910.)

The issuance of building permits, as we have seen, is a discretionary function. The permit process not only provides a means of ensuring that structures meet health, safety, and other requirements, it also subserves the public policies or goals of general land use planning. As noted in *Burns* v. *City Council, supra,* 31 Cal.App.3d 999, a building official has no mandatory duty to issue any particular building permit at all, even if a proposed application and plan meet all existing code and regulatory requirements which would be applicable to a proposed project.[10]

■ Section 307 of the Uniform Building Code, as adopted by City ordinance, is a part of the same statutory scheme that covers issuance of building permits. When section 307 is considered in context, it is clear that the building official is "authorized to determine" (see Gov. Code, §§ 818.4, 821.2) whether or not a particular project satisfies all the conditions of its building permit, as well as applicable code and other requirements, before issuing the certificate of occupancy. Obviously, the building official must be allowed great latitude (i.e., discretion) in making this determination. Generally speaking, therefore, if the certificate of occupancy is not issued because the building official has determined that the building or structure has not satisfied the applicable requirements—even if the determination is negligent or erroneous—the building official and the public entity are immune from tort liability, under Government Code sections 818.4 and 821.2, for the failure to do so, just as they are with respect to the decision to issue a building permit in the first place.[11]

■ Nevertheless, it should be noted that the discretion to issue a building permit at all is much broader than the discretion which must be exercised

---

[10]We have no occasion here to address a situation in which the denial of every kind of building or other development permit might deprive the landowner of all reasonable use of the property. Accordingly, we do not pass upon the question.

[11]See also *MacDonald* v. *State of California* (1991) 230 Cal.App.3d 319 [281 Cal.Rptr. 317], holding that the statutory scheme for inspecting and licensing day care facilities would not support governmental liability for injury to a child by a day care provider. The court expressly noted that "licensing activities are generally considered to be discretionary rather than mandatory. [Citations.]" (*Id.* at p. 330.) Indeed, the existence of immunity provision for

in determining whether to issue a certificate of occupancy. Once the building permit has *been issued*, it cannot be de facto revoked by the simple expedient of never issuing the certificate of occupancy. That is not to say that the holder of a building permit is automatically entitled to a certificate of occupancy (i.e., that the building official or public agency has a mandatory duty to issue one), merely because the project has been approved to the extent of obtaining a building permit. The building permit holder must first satisfy the building official, in the exercise of official discretion, that the project meets the requirements contained in the applicable statutes, codes, and regulations, and in the permit itself.

Section 306(c) of the Uniform Building Code provides in pertinent part: "(c) Certificate Issued. After final inspection when it is found that the building or structure complies with the provisions of this Code, the Building Official shall issue a Certificate of Occupancy." (See also § 307, quoted in fn. 9, *ante*, at p. 56.)

The critical point owner alleged here, which defendants have failed to grasp, is that, under sections 306(c) and 307(c) of the Uniform Building Code, the building official had *already exercised its discretion*; even if the building official is immune for its discretionary act *in determining whether or not* the certificate should be issued (i.e., that the building complies with the relevant requirements), the building official had in fact—by its "Final Inspection Okay"—already actually approved owner's building. The allegations of owner's complaint, which again, we accept as true, sufficiently state that she had complied with every applicable regulation. Accordingly, the building official retained no further discretion to withhold the certificate of occupancy. (Cf. *Johnson* v. *Mead* (1987) 191 Cal.App.3d 156 [236 Cal.Rptr. 277] and *Trewin* v. *State of California* (1984) 150 Cal.App.3d 975 [198 Cal.Rptr. 263, 41 A.L.R.4th 104] [Department of Motor Vehicles has discretion to determine whether a person is fit to operate a motor vehicle, but once it has determined an applicant is unfit, it has a mandatory duty not to issue or renew the license].)

b. *Enactment Intended to Protect Against Risk of Harm and Proximate Cause**

. . . . . . . . . . . . . . . . . . . . . . . . .

licensing activities itself indicated that "the predominant character of licensing is discretionary." (*Ibid.*, citing Gov. Code, § 818.4.)

*See footnote, *ante*, page 49.

3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 4. *Immunity Applicable to "Discretionary" Decisions Only*

Owner argues that a line of authority supports her claim that defendants are liable, if she can show that defendants' "discretionary" decision not to issue the building permit (under Gov. Code, §§ 818.4, 821.2) did not rise to the level of a basic policymaking decision. The authorities owner cites raise a problem deserving of some comment.

Owner relies on statements in several cases to the effect that immunity provisions such as Government Code sections 820.2, 818.4, and 821.2 apply only to "discretionary" activities, but that the "discretion" to which the immunity applies is the discretion to make basic policy or planning decisions. Although government officials exercise some decisionmaking power in implementing basic policy decisions, or in "operational" matters, that level of decisionmaking is not within the scope of immunity provided by the Tort Claims Act. (See *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]; *Wheeler* v. *County of San Bernardino* (1978) 76 Cal.App.3d 841 [143 Cal.Rptr. 295].)

Owner points to cases specifically construing the immunity sections at issue in this case (Gov. Code, §§ 818.4, 821.2 [immunities for issuing licenses, permits, etc.]) to apply to discretionary acts only, and not to mandatory acts. (*Morris* v. *County of Marin, supra,* 18 Cal.3d 901, 911-916; *Young* v. *City of Inglewood* (1979) 92 Cal.App.3d 437, 440 [154 Cal.Rptr. 724]; *Slagle Constr. Co.* v. *County of Contra Costa, supra,* 67 Cal.App.3d 559, 563; *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375, 386 [40 Cal.Rptr. 863].)

If these pronouncements mean that there is no immunity for failure to perform a mandatory statutory duty within the meaning of Government Code section 815.6, then there is nothing inconsistent between the holdings in these cases and our analysis here. In order for a public entity or employee to be liable under Government Code section 815.6, however, the plaintiff must demonstrate not only the existence of some statutory duty, but also that the statute violated was intended to protect against a certain risk of injury, that the plaintiff is a member of the class of persons the statute was designed to protect, and that the plaintiff suffered the injury sought to be protected against as a result of the public entity's or public employee's breach of the statutory obligation.

*See footnote, *ante*, page 49.

The cases owner cites with specific regard to Government Code sections 818.4 and 821.2 comport with this analysis. In *Morris* v. *County of Marin, supra,* 18 Cal.3d 901, a provision of the Labor Code expressly required that the entity issuing building permits must make certain that builders applying for permits carried workers' compensation insurance. (Lab. Code, § 3800.) The county failed to enforce this requirement, and an employee of the builder was injured. The Labor Code section was designed to ensure that construction employees had workers' compensation coverage; the plaintiff employee was a member of the class of persons sought to be protected and he suffered the very injury contemplated by the statute when he suffered a work injury for which there was no compensation. The county's breach of the mandate (to require contractors to carry workers' compensation insurance) resulted in the lack of compensation coverage for the plaintiff employee's injury. The county thus violated a mandatory statutory duty under Government Code section 815.6.

*Young* v. *City of Inglewood, supra,* 92 Cal.App.3d 437, is to the same effect. The Business and Professions Code requires entities issuing building permits to issue them only if the work covered is to be done by a licensed contractor. The city knew or should have known that the plaintiffs' proposed contractor was not licensed. The harm plaintiffs suffered—shoddy and incomplete work—was the kind of injury the statute was designed to protect against. Failure to comply with the Business and Professions Code section breached a mandatory duty within the meaning of Government Code section 815.6.

In *Slagle Constr. Co.* v. *County of Contra Costa, supra,* 67 Cal.App.3d 559, the plaintiff bought two parcels of property conditioned on approval of a subdivision tract map for each parcel. The maps were approved by the county with above-ground utility lines. When the plaintiff applied for a building permit, the county planning commission would not issue the permit unless the telephone lines were put underground. The plaintiff argued he was entitled to a permit issued in conformance with the approved map. The court held that, although the county had a *mandatory* duty to render a *discretionary* decision on development, the county was immune for the discretionary decision. The plaintiff did not have an absolute right to a building permit. The court's converse statement that the immunity provision (for discretionary decisions) did not apply to mandatory decisions or duties, did not add appreciably to the discussion.

In *Shakespeare* v. *City of Pasadena, supra,* 230 Cal.App.2d 375, the owners of property had a dispute with the plaintiff, who was purchasing the property. The plaintiff and his mother went to the property to check on

reports that the owners were committing waste on the premises. At the apparent instigation of the owners, the plaintiff and his mother were arrested by police and taken to jail. The police at the jail called the plaintiff and asked him if the money they had received should be used to release the plaintiff on bail, or to release the plaintiff's mother. They represented that the money was sufficient to release only one person, whereas in fact the money had been delivered to release both. The court held that, with additional allegations, the plaintiff's complaint was sufficient to state breach of a mandatory duty. If bail had been fixed by the court for both the plaintiff and his mother, and if the jailers knew that, and if the jailers then intentionally failed to advise the plaintiff that he was entitled to release (mandatory under Pen. Code, § 1295), the police were guilty of false imprisonment. Not only was there a mandatory duty under Government Code section 815.6, but Government Code section 820.4 makes a specific exception to immunity for false imprisonment. The court's statement, in that context, that the immunity for failure to issue permits under Government Code section 821.2 applied only to discretionary and not to mandatory acts is in full accord with the notion that governmental entity or employee liability must be based on statute.

Other cases, however, seem to suggest that a public entity or employee may be liable for acts or decisions solely because the kinds of decisions being made are a "lower," "operational" level, and not at a "planning" level. In *Johnson* v. *State of California, supra*, 69 Cal.2d 782, the court held the government was not immune when it placed a Youth Authority ward (on parole) in foster care without warning the foster parents of the ward's violent and dangerous propensities. The court stated that a public employee's immunity under Government Code section 820.2 for "discretionary" decisions, was meant to apply only to the exercise of *policymaking* discretion. Because the decision what to tell the foster parents was not a policymaking decision, it was not a "discretionary" act within the meaning of the immunity provisions. Therefore, no immunity applied. Thus, the court appears to have made the public employee liable (not immune) *in the absence of an express statutory provision for liability.*

The result in *Johnson* and similar cases appears to be driven by the notion that it would be unfair in certain instances to allow the government to be immune for its conduct. In *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685 [94 Cal.Rptr. 421, 484 P.2d 93], the county cut off Aid to Families with Dependent Children (AFDC) to certain families that refused to require their minor children over the age of 10 to work in the local grape harvest. The county welfare agency was requiring the minors to work as a condition for receiving AFDC. The court stated: "We must begin with the well-settled

notion that in governmental tort cases 'the rule is liability, immunity is the exception.' (*Muskopf* v. *Corning Hospital Dist.* [(1961)] 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457].) '[I]t would be unjust in some circumstances to require an individual injured by official wrongdoing to bear the burden of his loss rather than distribute it throughout the community.' (*Lipman* v. *Brisbane Elementary Sch. Dist.* [(1961)] 55 Cal.2d 224, 230 [11 Cal.Rptr. 97, 359 P.2d 465].) 'Accordingly, courts should not casually decree governmental immunity; . . .' (*Johnson* v. *State of California* [(1968)] 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352].) Unless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail." (*Ramos, supra*, 4 Cal.3d 685, 692.) The court repeated its statement that " 'in governmental tort cases "the rule is liability, immunity is the exception," ' " in *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 792 [221 Cal.Rptr. 840, 710 P.2d 907].)

The court's reliance on *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], and *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465], a companion to *Muskopf*, is curious, to say the least. *Muskopf* is the very case that abolished sovereign immunity in the state and caused the Legislature to adopt the Tort Claims Act. Both *Muskopf* and *Lipman* are statements of pre-Tort Claims Act common law liability policy. The Tort Claims Act, on the other hand, sought to *reestablish* sovereign immunity in California, and to make governmental employees and entities liable *only to the extent clearly provided by statute.*

Government Code section 815 expressly provides: "*Except as otherwise provided by statute:* [¶] (a) A public entity *is not liable* for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The *liability* of a public entity established by this part . . . *is subject to any immunity* of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person." (Italics added.) Government Code section 815.2, the respondeat superior section, provides that a public entity may be liable for the acts of a public employee within the scope of his employment "if the act or omission would, *apart from this section,* have given rise to a cause of action against that public employee or his personal representative." Government Code section 815.6 imposes liability for failure to discharge a "mandatory duty *imposed by an enactment.*" Government Code section 820.2 provides that "*Except as otherwise provided by statute,* a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the

exercise of discretion vested in him, *whether or not such discretion is abused.*" (Italics added.) █ The legislative committee comments to Government Code section 815 make clear that the Tort Claims Act was intended to "abolish[] all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable *only if a statute* (not including a charter provision, ordinance or regulation) *is found declaring them to be liable. . . .* [T]he practical effect of this section is to *eliminate any common law governmental liability* for damages arising out of torts." Moreover, "under subdivision (b) of [Government Code section 815], the *immunity provisions will as a general rule prevail over all sections imposing liability.*" (Legis. Com. com., Deering's Ann. Gov. Code, § 815, (1982 ed.) pp. 134-135, italics added.) To all appearances, therefore, the Tort Claims Act was intended to make *immunity* the rule; liability is imposed only if provided by statute. (*Cochran* v. *Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409 [205 Cal.Rptr. 1]; accord, *Harshbarger* v. *City of Colton* (1988) 197 Cal.App.3d 1335 [243 Cal.Rptr. 463]; see also *Rodriguez* v. *Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707 [230 Cal.Rptr. 823]; *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648, 653 [161 Cal.Rptr. 140].)

It was, moreover, completely unnecessary for the court in *Ramos* to resort to the pre-Tort Claims Act "rule" of governmental liability. The plaintiffs had a perfectly viable claim under Government Code section 815.6. Some of the children forced to work suffered illness or injury that the child labor laws were designed to protect against. The acts of the government employees in coercing violations of the child labor laws were clearly against the statutory purpose of those provisions. It was also improper for the local welfare department to set unlawful conditions of eligibility for receiving program benefits. The eligibility standards were set by state law and the acts of the government employees in depriving eligible children of necessary support was an injury the welfare laws were designed to prevent. The court's understandable outrage at the governmental conduct did not, however, require the distortion of governmental immunity law.

To the extent that the cases cited by owner indicate that there is some sort of vacuum of liability for exercise of low-level "discretion," without an affirmative statutory provision of liability, they are difficult to reconcile with the history and purpose of the Tort Claims Act. We decline to so interpret the Tort Claims Act.

## DISPOSITION

For the reasons stated, the judgment is reversed as to the causes of action for inverse condemnation and failure to discharge a mandatory ministerial

duty (not issuing timely the certificate of occupancy). As to all other causes of action, the judgment is affirmed. Appellant shall recover costs on appeal.

Hollenhorst, J., and Timlin, J., concurred.