[No. C018363. Third Dist. Aug. 31, 1995.]

HENRY WINIG et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

## Counsel

Jesse S. Kaplan, Steven E. King, De Goff & Sherman, Richard Sherman, Victoria J. De Goff, Walkup, Melodia, Kelly & Echeverria and John Echeverria for Plaintiffs and Appellants.

William M. McMillan, George Cory, Lauren A. Machado and Kenneth G. Nellis for Defendant and Respondent.

## OPINION

**BLEASE, Acting P. J.**—Plaintiffs Henry Winig and Robert Desruisseaux appeal from summary judgments in favor of the State of California (the State) in an action for damages for personal injuries caused by a dangerous condition of public property. The alleged dangerous condition is an inadequately protected 18-inch deep excavation running parallel to and about 5 feet from the fast lane of a freeway.

The summary judgments are predicated on Government Code section 830.6[1], which immunizes the state from liability "for an injury caused by the plan or design *of* a construction of, or an improvement to, public property" if the plan or design is properly approved. (Italics added.) The trial court read the section as extending to the plan "for" construction of an improvement to public property, encompassing the means of its construction. As appears, the trial court has misread the statute. It applies to the plan or design "of" the improvement and not the means of its construction.

We will reverse the judgments.

### FACTS AND PROCEDURAL BACKGROUND

A brief account of the accident suffices. Shortly before 6 a.m. on Saturday, May 26, 1990, plaintiffs Winig and Desruisseaux were passengers in a pickup truck traveling west on Interstate Highway 80 about 12 miles east of Colfax. David Heard was driving a car traveling east in the fast lane on that freeway, toward the plaintiffs.

A construction project was in progress on that stretch of freeway. The purpose of the project, in pertinent part, was to widen and strengthen the median paved shoulder and to install approximately four miles of permanent concrete median barrier. To install the median barrier it was necessary to excavate the median to a minimum depth of 1.35 feet so that a base material could first be installed. On the morning of the accident, the excavation had

---

[1]References to a section are to the Government Code unless otherwise indicated.

proceeded and the condition of the freeway was as shown in the following photographs, looking west, in the direction that Heard was traveling.

The drop-off at the left margin of the pavement is 18 inches. The distance from the outside of the yellow line marking off the shoulder from the fast lane is four feet ten inches. The traffic cones sit at the edge of the drop-off.

Heard fell asleep at the wheel. His car crossed the paved shoulder and into the excavation. He awoke but had no control; his car overturned and collided with the pickup in which plaintiffs were traveling. Plaintiffs suffered serious personal injuries.

The State moved for summary judgment on the theory that the construction project was proceeding in accord with the plans for its construction and this affords a defense under section 830.6. The trial court accepted the basic premise and awarded the summary judgment.

This appeal ensued.

## DISCUSSION

The question is whether section 830.6 applies to a temporary dangerous condition of public property which arises during the construction of an improvement to public property.

As appears, the application of the statute to other than the plan or design of the finished project is unwarranted by its text, precedent, or the history of its enactment.

Section 830.6, in pertinent part, is as follows: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."[2]

The State argues that the statute is applicable to an injury caused by the " 'plan' *for* 'an improvement to', public property . . . ." (Italics added.) It

---

[2]The original enactment in 1963 was drafted by the California Law Revision Commission. The Law Revision Commission appended the following comment, in pertinent part, to its proposed draft of section 830.6.

"Section 830.6 provides immunity where a governmental body exercises the discretion given to it under the laws of the State in the planning and designing of public construction and

concedes that the claim is novel but submits that there is nothing in the language or the history of the statute which limits its application to finished improvements. The portion of the State's argument we have italicized is its textual undoing: the quoted portion of the statute, with appropriate ellipses, reads "plan . . . *of* . . . an improvement to, public property . . . ." (§ 830.6, italics added.) The plan or design *of* an improvement to public property is the plan or design *of* the finished product and not the plan or design *for* constructing the improvement. In the statutory phrase "a construction of . . . public property," "construction" is a noun.[3]

The class of risks that attend construction work is dissimilar to that attending the design of improved public property. The risks inherent in the static design alternatives of a finished fixed installation are different in kind and generally more limited and foreseeable than those which arise in the fluid process of construction. Nothing in *Weiss* v. *Fote, supra,* or in any of the California cases applying section 830.6, affords a precedent for extending the scope of the immunity to the class of risks that attend construction work, as opposed to finished works of construction.

There is no California case which applies section 830.6 to the means of construction of an improvement of public property. For that reason the parties focus on the rules for construction of the statute.

---

improvements. No similar immunity for liability is provided entities under the Public Liability Act of 1923. The immunity provided by Section 830.6 is an immunity from liability under this chapter (Sections 830 to 840.6) only; hence, a public entity in some cases may be held liable under some enactment not contained in this chapter. For example, a public entity might be held liable under Section 815.6 for an injury resulting from its failure to exercise reasonable diligence to discharge a mandatory duty imposed by an enactment.

"The immunity provided by Section 830.6 is similar to an immunity that has been granted by judicial decision to public entities in New York. See *Weiss* v. *Fote,* 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 (1960)." (4 Cal. Law Revision Com. Rep. (Dec. 1963) p. 851.)

[3]Section 830.6 uses the overlapping pair of terms: "a construction of . . . public property" and "an improvement to, public property." At first reading this seems odd because, at least under their broadest connotations, the terms encompass each other. (E.g., compare § 15802, construction of a building includes improvement, with Civ. Code, § 3106, work of improvement includes construction of any building, bridge, ditch, etc.) Presumably the duality ensures that the scope of the immunity extends to the broadest usage of the terms and to ensure that it is applied both to an original construction and any subsequent improvements.

Similarly "plan" and "design" are often synonymous and the duality avoids the possibility that a narrow denotation of either term could constrict the reach of the immunity. Both "planning and designing" are used in *Weiss* v. *Fote* (1960) 7 N.Y.2d 579 [200 N.Y.S.2d 409, 167 N.E.2d 63] (fn. 2, *ante*), from which the immunity is derived. (167 N.E.2d at p. 67.) The issue in *Weiss* was whether the timing interval of a traffic signal made an intersection actionably dangerous. If the question turned on a statute using only the term "design" it might be argued that this was not, strictly speaking, a matter of design. However, the interval was a part of the plan for the installation and operation of the traffic signal from the outset.

 As plaintiffs note, the leading California Supreme Court case, *Baldwin* v. *State of California* (1972) 6 Cal.3d 424, 435-436 [99 Cal.Rptr. 145, 491 P.2d 1121], establishes the rule of construction that where it is unclear whether the immunity statute is applicable the parties injured by negligent acts are entitled to the benefit of the doubt. (Also see, e.g., *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 792-793 [221 Cal.Rptr. 840, 710 P.2d 907].)

 The State suggests that the Supreme Court "disregard[ed]" this "erroneous statement" in *Brown* v. *Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829 [15 Cal.Rptr.2d 679, 843 P.2d 624] in the following passage. "Brown's suit against the District is not an ordinary negligence case; it is an action under section 835. This is because a public entity is not liable for injuries except as provided by statute (§ 815) and because section 835 sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property. '[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied.' (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].)"

There is nothing in this passage in *Brown* which repudiates the rule of construction in *Baldwin*. In *Brown* the issue was whether the plaintiff had met the threshold requirements for liability of section 835. There is no such issue in this case (for present purposes), nor was there in *Baldwin*. *Brown* says no more than that sovereign immunity is waived under the Tort Claims Act only if the "various requirements" (terms) of the act are met. It does not address the terms or the rule for their construction.

The State points to discordant decisions of the lower courts, some of which reiterate the doctrine applied in *Baldwin* and others which question or criticize it. (See Cal. Government Tort Liability Practice (Cont.Ed.Bar 1992) § 2.13, pp. 81-83, collecting the cases.) The general tenor of the criticism is that a "narrow" construction doctrine is inconsistent with section 815, which says there is no liability except as provided by statute and that statutes imposing liability are "subject to" statutes providing an immunity. (See, e.g., *Thompson* v. *City of Lake Elsinore* (1993) 18 Cal.App.4th 49, 61-63 [22 Cal.Rptr.2d 344], addressing the immunity of government employees for acts resulting from the exercise of discretion.)[4]

---

[4]This generalized employee immunity is not applicable to cases of government *entity* liability predicated upon a dangerous condition of public property. (See, e.g., Cal. Govern-

We have no occasion to reconcile the many and varied holdings of cases which address statutes not in issue in this case.[5] It suffices to say that the opinions criticizing the doctrine in *Baldwin* to which the State points have not been issued by the Supreme Court and none pertain to the immunity afforded under section 830.6. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The State also relies upon two decisions from other states which construe plan or design immunity statutes, *Cobb* v. *Waddington* (1977) 154 N.J.Super. 11 [380 A.2d 1145] and *Elce* v. *State* (1986) 110 Idaho 361 [716 P.2d 505]. The latter case is textually inapposite, since the Idaho statute provides immunity from any claim which: " 'Arises out of a plan or design *for* construction or improvement to the highways, [etc]." (716 P.2d at p. 508, italics added.)

*Cobb* v. *Waddington, supra,* which construed a New Jersey statute that is grammatically similar to ours, is unpersuasive. The analysis of the design immunity statute is cursory, perhaps because the holding is also founded upon a more general New Jersey statute that affords a public entity immunity for any injury resulting from the exercise of judgment or discretion. (380 A.2d at pp. 1147-1148.) As noted earlier (fn. 4, *ante*), that is not the case in California. There is nothing in *Cobb* v. *Waddington* which addresses the point of grammar of the statute we have discussed, nor is there any suggestion that the California rule of statutory construction, as applied in *Baldwin,* is part of New Jersey's jurisprudence.

Since the summary judgments rest upon an untenable foundation, they must be reversed on that ground. None of the subordinate contentions of error warrant discussion.

---

ment Tort Liability Practice, *supra,* §§ 2.65, 2.66, pp. 139-140.) The California Law Revision Commission comment to section 835 says, in pertinent part: "The section is not subject to the discretionary immunity that public entities derive from Section 815.2, for this chapter itself declares the limits of a public entity's discretion in dealing with dangerous conditions of public property." (4 Cal. Law Revision Com. Rep., *supra,* at p. 854.) The statutory chapter addressing dangerous conditions of public property does recognize a related defense, that the act or omission that created the condition was reasonable. (§ 835.4.) This defense however, ordinarily presents a triable issue of material fact. (See, e.g., *De La Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739, 748-749 [94 Cal.Rptr. 175].)

[5]The question whether a particular claim affords a sufficient doubt if a statute applies to warrant resort to the *Baldwin* doctrine involves a grammatical judgment. It arises only when such a claim of application has been put in issue. There is no facial inconsistency between section 815 and the *Baldwin* doctrine that the plaintiff should receive the benefit of a material doubt about the reach of an immunity statute. Section 815 does not address the construction of the liability or immunity statutes. Its rule that liability, as a general rule, is subject to the immunity statutes affords no guidance on construing the meaning of an immunity statute.

## DISPOSITION

The judgment is reversed. Plaintiffs shall recover their costs of this appeal

Raye, J., and Morrison, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 22, 1995.