MOSK, J., Concurring and Dissenting.
The first cause of action states a valid claim for relief. Accordingly, the Court of Appeal’s judgment should be reversed in part.
Plaintiff’s first cause of action alleges failure to comply with the duty to record a certificate of substandard condition prescribed in this ordinance: “Whenever the Superintendent of Building determines by inspection that a property, either improved or unimproved, is unstable because of landslide, subsidence or inundation[,] he shall give written notice to the owner that the property is substandard. Notice shall specify conditions creating substandard classification. [¶] At the time of giving the above mentioned notice, the Superintendent of Building shall also file with the office of the County Recorder a certificate that the property is substandard and that the owner thereof has been so notified. The certificate shall specify conditions creating substandard classification. [¶] Upon notice of correction of the unstable conditions due to landslide, subsidence or inundation[,] the Superintendent of Building shall file with the office of the County Recorder a certificate specifying that the property is no longer considered substandard due to landslide, subsidence or inundation.” (L.A. Mun. Code, § 91.0308 (d).)
The ordinance’s plain language does not admit of any discretionary exercise of judgment on the part of the responsible city employee regarding whether the certificate should be recorded, even if discretion and judgment are involved in evaluating the substandard conditions to be specified in the owner’s notice and the recorded certificate. Once this work has been done, the ordinance requires that the certificate be recorded when the owner receives notice of the problem. In this respect, it creates a mandatory duty. (See Thompson v. City of Lake Elsinore (1993) 18 Cal.App.4th 49, 57-58 [22 Cal.Rptr.2d 344] [city had discretion to issue building permit or not and to determine whether completed project met permit requirements, but once the final determination of compliance was made it “retained no further discretion to withhold the certificate of occupancy”]; Johnson v. Mead (1987) 191 Cal.App.3d 156, 159-160 [236 Cal.Rptr. 277] [Department of Motor Vehicles had discretion to determine whether driver’s alcoholism and drug addiction made him incapable of driving safely, but once it decided, it had a mandatory duty not to issue or renew driver’s license].)
I also believe that the ordinance was designed to protect against the type of injury plaintiff allegedly suffered. To be sure, one evident purpose of the *510 ordinance’s recording requirement is to encourage the landowner to undertake necessary stabilization work, lest the recorded certificate cause the property to become difficult or impossible to sell. But the warning that recording provides to potential purchasers and lenders is an integral part of the legislative scheme and, in that sense, cannot be described as “incidental.” (Nunn v. State of California (1984) 35 Cal.3d 616, 626 [200 Cal.Rptr. 440, 677 P.2d 846].) It is precisely by protecting others against unknowingly buying (or lending money on the security of) unstable property that recording serves as leverage against the current owner. Nor can the interest of a property’s future owners in knowing its stability, or lack thereof, be described as wholly economic; the warning that recording provides may prevent future owners from building unsafe improvements, or may spur them to take corrective measures. Whether recording leads to the owner’s correcting the problem or whether the owner chooses to leave the problem uncorrected and forgo future development or sale of the property, then, the effect is within the general goals of the city’s building code—to protect life, health, property and the general welfare by regulating construction.
As regards inspection immunity, I agree with plaintiff that the connection between inspection and the negligence alleged—the failure to record a certificate with the county recorder’s office—is too attenuated to call for application of Government Code section 818.6. That statute provides: “A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its property ... for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety.” The inspection process was completed when the city reported the results of the inspection by notifying the property owner of the need to correct the property’s unstable condition. The city’s failure to take an additional mandated step designed for enforcement and as a warning to others—i.e., recording the notice with the county recorder—was not an integral part of the inspection. (Cf. Cochran v. Herzog Engraving Co. (1984) 155 Cal.App.3d 405, 412 [205 Cal.Rptr. 1].)
There is also the question whether Code of Civil Procedure section 337.15 bars the suit. It provides, in relevant part: “(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property, [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency.”
*511 Code of Civil Procedure section 337.15 protects only two classes of potential defendants (along with their sureties): those who have “develop [ed]” real property and those who have “perform[ed] or fumish[ed]” specified services contributing to an “improvement” to real property. The city does not contend that it developed the property. The question, therefore, is whether the negligence alleged in the first cause of action occurred in the performance or furnishing of “design, specifications, surveying, planning, supervision, testing, or observation of construction or construction” for an improvement of the property. (Ibid.) It did not. The recording of, or failure to record, a notice that land is in substandard condition because of instability, unconnected to ongoing or contemplated improvement, cannot be described as the performance or furnishing of a service for an improvement to real property.
For the foregoing reasons, I would reverse the Court of Appeal’s judgment in part and affirm it in part.