Filed 4/18/13  McKenna v. San Miguel Consolidated Fire Protection Dist. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THERESA MCKENNA, Plaintiff and Appellant, v. SAN MIGUEL CONSOLIDATED FIRE PROTECTION DISTRICT, Defendant and Respondent. | D061316 (Super. Ct. No. 37-2011-00067727-CU-NP-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.


INTRODUCTION

Theresa McKenna appeals from a judgment dismissing her complaint for negligence and intentional interference with prospective economic advantage against the San Miguel Consolidated Fire Protection District (District) after the trial court sustained the District's demurrer to the complaint without leave to amend.  McKenna contends the trial court erroneously found her complaint failed to state claims for direct and vicarious

liability based on the unlawful manner in which the District processed her fire protection plan (fire plan). She alternatively contends the trial court should have granted her leave to amend her complaint to state a cause of action.

We agree with the District that the trial court correctly ruled the codes, regulations, and ordinances McKenna relied on did not provide any basis for direct liability because they created no mandatory duty owed to her. We further agree with the District that the trial court correctly ruled the District did not have direct or vicarious liability because the District and its employees are immune from liability for discretionary acts, including decisions in a permitting or approval process. The District is also immune from liability for any misrepresentations its employees may have made in processing the fire plan. As McKenna has not shown she can successfully amend her complaint, we conclude the trial court did not err in denying her leave to do so. Accordingly, we affirm the judgment.[1]

BACKGROUND

According to the allegations in her complaint, which we assume to be true for purposes of this appeal (*Harshbarger v. City of Colton* (1988) 197 Cal.App.3d 1335, 1338), McKenna owns a 16-acre residential lot in eastern San Diego County. In April 2004 she began efforts to obtain approval to split her property into two lots (project). In

---

[1]	Along with its respondent's brief, the District filed a request for judicial notice of excerpts from the 2001 and 2007 versions of the California Fire Code absolving fire officials from individual liability for damages arising from their performance of their official duties under the code. We deny the request as this information is not necessary to our resolution of this appeal. (*San Diego City Firefighters, Local 145 v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 600, fn. 3 (*Firefighters*.)

September 2005 she submitted a tentative parcel map application (application) to the County of San Diego's Department of Planning and Land Use (County). As part of the application process, the District was required to review McKenna's proposed fire plan to determine whether it complied with all applicable fire codes, regulations, and ordinances and then either approve it, approve it with conditions, or deny it.

In November 2005 McKenna submitted the fire plan for the District's review. Neither the County nor the District had guidelines for preparing fire plans. They also did not have a list of recommended consultants or a template to assist applicants.

In preparing her fire plan, McKenna relied on recommendations and conditions contained in letters sent from the District to the County in October and November 2005. The District approved the fire plan in December 2005 and again in April 2006.

In August 2006 based on the District's approval of the fire plan, the County also approved the fire plan. However, more than a year later, in October 2007, the County withdrew its approval because the fire plan did not provide for secondary access to the property in case of fire emergencies.

McKenna met with the District's fire marshal and the County's fire marshal in early November 2007 to discuss the secondary access requirement. They suggested McKenna propose using another roadway as a "same practical effect" alternative. During the meeting, the fire marshal admitted she did not know she was supposed to be enforcing state fire regulations even though knowledge of such matters was a requirement for her position.

3

Immediately after meeting with McKenna, the two fire marshals met with a County representative and concluded the "same practical effect" alternative was not a viable option. They did not, however, share this information with McKenna.

Meanwhile, during the remainder of 2007 and into 2008, McKenna developed an alternative roadway same practical effect proposal. She obtained easements from her neighbors for the roadway, conditioned upon gates being installed at both ends of the roadway to prevent unrestricted access. The District's fire chief denied the proposal, indicating the gates had to be accessible to the general public.

McKenna appealed the fire chief's decision to the District's governing board (Board). The Board directed the fire chief to host a meeting with McKenna and others to attempt to resolve the matter. In a communication to another fire official to set up the meeting, the District's fire marshal used language suggesting the outcome of McKenna's appeal hearing had been predetermined. McKenna brought the communication to the Board's attention. One of the Board members responded that he was very disturbed by it and would request a formal investigation into it.

The resolution meeting was held in October 2008. During the meeting, the County's fire marshal informed McKenna for the first time that the maximum length of the alternative roadway could not exceed 1,320 feet. She had previously been told the maximum was twice that length. The difference directly impacted the viability of her proposal and prevented resolution of the gate issue.

McKenna's appeal of the gate issue appeared on the Board's November 13, 2008 agenda. McKenna was not given notice of this and did not attend the meeting. The

4

Board subsequently denied the appeal and upheld the fire chief's decision not to allow private gates on the alternative roadway.

In August 2009 the Board conducted another appeal hearing. The precise topic of the appeal is not clear from McKenna's complaint, but in her opening brief she states it was the appeal of the fire chief's denial of her same practical effect proposal. In preparation for the hearing, the District's fire marshal submitted McKenna's proposal to an outside fire marshal for an independent review. However, the outside fire marshal was not independent, as he had previously voted to deny McKenna's proposal at a county peer review committee meeting. The District's fire chief used the outside fire marshal's report without success in his attempt to persuade the Board to uphold his denial of McKenna's proposal. The Board overturned the fire chief's decision and approved her proposal. Nonetheless, then the proposal was infeasible because McKenna's neighbors could no longer provide the necessary easements for the alternative roadway.

Two months later, the District's legal counsel sent McKenna a letter informing her the District was conducting a formal investigation. He also informed her the District's fire chief and fire marshal would no longer be handling her project pending the investigation's conclusion.[2]

She subsequently filed a claim with the District and the District rejected it. She then filed this action for negligence and intentional interference with prospective

---

[2]    Although not entirely clear from the complaint, the investigation appears to have been initiated by correspondence McKenna filed with District the day before. The District ultimately found the allegations against the fire marshal and fire chief unfounded.

economic advantage. The gravamen of her complaint is somewhat counterintuitive. She asserts her original fire plan did not comply with state and local fire codes and ordinances. However, because District failed to properly hire, train and supervise its employees and because these employees failed to properly enforce state and local fire codes and ordinances, the District negligently approved the fire plan in December 2005 and again in April 2006. This approval, along with the District's later withholding and intentional misrepresentation of material facts, induced her to fruitlessly continue expending time and money processing her application instead of abandoning it.

The District demurred to McKenna's complaint, arguing her causes of action failed to state a claim because she did not allege "a statute or enactment upon which liability may be based against [the District], or which provided a duty or mandatory duty for [the District] to perform the acts alleged." The trial court sustained the demurrer without leave to amend, finding McKenna failed to allege a basis for direct liability "because she has not identified any mandatory duties created by an enactment." The trial court further found McKenna failed to allege a basis for derivative liability because "[n]either [the District] nor its employees can be sued in tort for injury caused in connection with the adoption or enforcement of an enactment, or the decision to issue or deny a permit, license or similar authorization. [Citations.]" As the trial court found these defects could not be cured by amendment, it sustained the demurrer without leave to amend.

6

DISCUSSION

I

*Standard of Review*

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' [Citation.] 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.] In reviewing the petition/complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' [Citation.]

"Further, '[i]f the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]' [Citation.] '[S]uch a showing can be made for the first time to the reviewing court [citation] . . . .' " (*Firefighters*, *supra*, 206 Cal.App.4th at pp. 605-606.)

## II

McKenna seeks to hold the District accountable for her damages under both direct and vicarious liability theories.  We conclude neither theory is viable.

### A

### *Direct Liability*

"[A] public entity may be liable for an injury directly as a result of its own conduct or omission, rather than through the doctrine of respondeat superior, *but only 'as . . . provided by statute*.'  (Gov. Code, § 815, italics added.)"  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1131.)  One statutory source of direct liability for a public entity, "Government Code section 815.6 provides:  'Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.'  Thus, 'Government Code section 815.6 contains a three-pronged test for determining whether liability may be imposed on a public entity:  (1) an enactment must impose a mandatory, not discretionary, duty [citation]; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting [Government Code] section 815.6 as a basis for liability [citations]; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered.' "  (*Thompson v. City of Lake Elsinore* (1993) 18 Cal.App.4th 49, 54.)

McKenna's complaint fails to state a cause of action under Government Code section 815.6 because it fails the first prong of this test.

1

McKenna's complaint alleged the District violated its mandatory duty to hire qualified employees and to train, supervise, investigate, and discipline them. Although McKenna has not focused on this allegation on appeal, we are uncertain whether she has wholly abandoned a claim based on it. Assuming she has not, she nonetheless fails to state a cause of action for negligent hiring, training, supervision, and retention because she has not cited a statutory basis for it as required by Government Code section 815.6. "[A] direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained." (*de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 255-256.)

2

McKenna's complaint also alleges the District violated its mandatory duty to apply applicable fire codes, regulations, and ordinances when it reviewed her fire plan. To support a claim based on this allegation, she cites to state regulations, a County general plan amendment and several Health and Safety Code sections.

The state regulations she cites are sections 1270.04 and 1270.05 of title 14 of the California Code of Regulations, which are part of the California Board of Forestry and Fire Protection's basic wildland fire protection standards. (Cal. Code Regs., tit. 14, § 1270.) The first cited regulation requires "local jurisdictions" to notify the "Director"

9

of applications for tentative maps. The "Director" then may review the maps and make fire protection recommendations. In addition, the "local jurisdictions" must ensure the regulatory standards become conditions of approval of the maps. (Cal. Code Regs., tit. 14, §1270.04.) The second cited regulation indicates that either the "Director" or certain "local jurisdictions" have authority to inspect for compliance with the standards. (Cal. Code Regs., tit. 14, §§ 1270.05, subd. (a), 1270.06.) For purposes of these regulations, "Director" means the "Director of the Department of Forestry and Fire Protection or his/her designee" and "[l]ocal jurisdiction" means "[a]ny county, city/county agency or department, or any locally authorized district that issues or approves building permits, use permits, tentative maps or tentative parcel maps, or has authority to regulate development and construction activity." (Cal. Code Regs., tit. 14, § 1271.00.) As the District does not fall within either definition, the cited regulations do not impose any duty, mandatory or otherwise, on the District.

McKenna similarly cites to provisions in a County general plan amendment discussing certain County responsibilities in the land use approval process (i.e., to refer a project to appropriate fire protection agencies for review and to require the availability of sufficient fire protection and emergency services facilities). As these provisions do not discuss any corresponding responsibilities of the District's, they do not establish any mandatory duty on the District's part.

In her opening brief, McKenna also cites to three sections of the Fire Protection District Law of 1987 (Health and Saf. Code, § 13800 et seq.). Two of the cited sections identify certain express and implied powers the District "shall" have. (Health and Saf.

10

Code, §§ 13861, 13862.) The other section identifies a circumstance in which the District's governing board "shall" be deemed a legislative body and the District "shall" be deemed a local agency. (Health and Saf. Code, § 13869.) None of these sections requires the District to exercise any particular power in any particular way. To the contrary, the first cited section expressly states the District "may" exercise the specified powers, indicating the District has the discretion whether to do so. (Health and Saf. Code, § 13861; *Morris v. County of Marin* (1977) 18 Cal.3d 901, 908 ["As used in [Government Code] section 815.6, the term 'mandatory' refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses"], criticized on another point in *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 987, fn. 8.)

For the first time in her reply brief, McKenna cites to another Health and Safety Code section. This cited section provides that the chief of a fire protection district or authorized representatives "*shall* enforce in their respective areas building standards relating to fire and panic safety adopted by the State Fire Marshal and published in the California Building Standards Code and other regulations that have been formally adopted by the State Fire Marshal for the prevention of fire or for the protection of life and property against fire or panic." (Health & Saf. Code, § 13145, italics added.)

Although the statute uses the word "shall," "[i]n determining whether a mandatory duty actionable under [Government Code] section 815.6 had been imposed, the Legislature's use of mandatory language (while necessary) is not the dispositive criteria. Instead, the courts have focused on the particular action required by the statute, and have

11

found the enactment created a mandatory duty under [Government Code] section 815.6 only where the statutorily commanded act did not lend itself to a normative or qualitative debate over whether it was adequately fulfilled. (*de Villers v. County of San Diego*, *supra*, 156 Cal.App.4th at p. 260.) Thus, courts have held that where compliance with the statute requires the public entity to render a considered decision based on its expertise and judgment, the statute imposes a discretionary rather than a mandatory duty. (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 899-900; *Sonoma AG Art v. Department of Food & Agriculture* (2004) 125 Cal.App.4th 122, 128 [even if a statute contains mandatory language creating a duty, the duty is discretionary if the public entity must exercise significant discretion to perform it].)

In this case, while McKenna's complaint inarguably portrays bureaucracy at its worst, it simply does not present an actionable claim. McKenna's complaint and brief consistently describe the District's task as determining whether her submittal complied with applicable codes, regulations, and ordinances. As this determination required expertise and judgment, it was discretionary and Government Code section 818.4 immunizes the District for liability for damages arising from it, even if the District was negligent or otherwise erred in making it. (See, e.g., *Thompson v. City of Lake Elsinore*, *supra*, 18 Cal.App.4th at pp. 55-56; *Burns v. City Council* (1973) 31 Cal.App.3d 999, 1003-1005.)

B

*Vicarious Liability*

In addition to being directly liable for breaches of mandatory duties, " '[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his [or her] employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his [or her] personal representative' [citation], except 'where the employee is immune from liability' [citation]. This '[v]icarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior.' " (*Firefighters*, *supra*, 206 Cal.App.4th at p. 611.)

1

To the extent McKenna's claims against the District are based on allegations the District's employees' negligently approved her initial fire plan, her claims fail to state a cause of action against the District. Public employees, like public entities, are not liable for injuries caused by the issuance or denial, or the failure to issue or deny a permit, approval or similar authorization where they are authorized by enactment to determine whether the authorization should be issued or denied. (Gov. Code, § 821.2; *Burchett v. City of Newport Beach* (1995) 33 Cal.App.4th 1472, 1480; *O'Hagan v. Bd. of Zoning Adjustment* (1974) 38 Cal.App.3d 722, 726-727.)

13

The fact the District's employees may not have applied the appropriate codes, regulations, and ordinances in their review of the fire plan does not abrogate their immunity. As the Supreme Court has explained, cases cannot be read "to hold that a public employee acts beyond his [or her] discretion, or breaches a 'mandatory duty,' whenever he or she commits a statutory violation while performing public duties. [Citation.] Such a rule would vastly undermine the immunity for discretionary acts." (*Caldwell v. Montoya*, *supra*, 10 Cal.4th at p. 987-988, fn. 8; see also *Downer v. Lent* (1856) 6 Cal. 94, 95 ["Whenever, from the necessity of the case, the law is obliged to trust the sound judgment and discretion of an officer, public policy demands that he should be protected from any consequences of an erroneous judgment."].)

2

To the extent McKenna's claims against the District are based on negligent or intentional misrepresentations by the District's employees, the claims also fail to state a cause of action against the District. While public employees have only qualified immunity for injuries caused by their misrepresentations, a public entity has absolute immunity for such injuries. (Gov. Code, §§ 818.8, 822.2; *Harshbarger v. City of Colton*, *supra*, 197 Cal.App.3d at pp. 1340-1341; *Burchett v. City of Newport Beach*, *supra*, 33 Cal.App.4th at p. 1480.)

C

*Leave to Amend*

McKenna contends that even if the trial court properly sustained the District's demurrers, the trial court erred by denying her leave to amend her complaint. We review

14

the decision to deny leave to amend under the abuse of discretion standard.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  McKenna has not shown the trial court abused its discretion in this case because she has not established there is a reasonable probability she can amend her complaint to state a claim for which the District does not have immunity.  (*Ibid.*)

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own appeal costs.


MCCONNELL, P. J.

WE CONCUR:


NARES, J.


MCINTYRE, J.