Filed 8/29/24  Kravchuk v. Taylor Morrison of California CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIIA KRAVCHUK, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> TAYLOR MORRISON OF CALIFORNIA, LLC, <br><br> Defendant and Respondent. | H051625 <br> (Santa Clara County <br> Super. Ct. No. 18CV322457) |

Taylor Morrison of California, LLC (Taylor) was the developer of the Indigo project, which involved the construction of six townhome units located at 73 Montecito Vista Drive in San Jose (the Project).  In March 2017, appellant Mariia Kravchuk entered into a purchase and sale contract (Agreement) with Taylor, the developer/seller, to purchase a townhome, Lot 1 (the Townhome, or unit 1), in the Project.  After Taylor canceled escrow for the sale of the Townhome, Kravchuk filed suit against Taylor for breach of written contract.  (The complaint was amended several times to include additional claims and to add defendants.)  Kravchuk contended in her pleadings that the issuance of a certificate of occupancy (hereafter, sometimes COO) was required under the Agreement to trigger "Escrow Closing," and she was therefore within her rights to insist upon fulfillment of this condition before completing the sale.  The language of the Agreement, however, provided that "Escrow Closing" would occur after the issuance of a certificate of occupancy *or its equivalent*.  Taylor asserts that this condition was satisfied,

Kravchuk breached the Agreement by refusing to move forward to close escrow, and Taylor was therefore justified in canceling the transaction in January 2018.

Kravchuk filed a motion for summary judgment under Code of Civil Procedure section 437c.[1] She contended that Taylor breached the Agreement by terminating the transaction before the issuance of a certificate of occupancy or its equivalent. She disagreed with Taylor's position that the statement in a final inspection report on November 9, 2017, by the City of San Jose (City) that "all units ok to occupy" was the *equivalent* of a COO which justified Taylor's insistence that Kravchuk close escrow immediately thereafter. The trial court denied Kravchuk's summary judgment motion, ruling that (1) the City's inspection report constituted approval of the Townhome; (2) after approving the Townhome, the City had no discretion to withhold issuing a COO, as its issuance was a ministerial act; and (3) the inspection report was thus the equivalent of a COO. Based upon this reasoning, the court denied Kravchuk summary adjudication of her causes of action for breach of contract, breach of the implied covenant of good faith, and fraud/deceit; it therefore denied summary judgment.

Taylor then filed a motion for judgment on the pleadings, arguing that the court's summary judgment order precluded Kravchuk from being able to prevail on the three causes of action against Taylor. Kravchuk, while preserving her right to challenge the court's summary judgment ruling by appeal, stipulated that the court could enter judgment in favor of Taylor. On November 8, 2023, the court granted Taylor's motion for judgment on the pleadings.

On appeal, Kravchuk contends that the trial court erred in denying her motion for summary judgment that led to the entry of judgment. She argues that the trial court's conclusion that the City's inspection report constituted the equivalent of a COO was erroneous and contrary to the applicable provisions of the San Jose Municipal Code

_____

[1] Further statutory references are to the Code of Civil Procedure unless otherwise stated.

(hereafter Municipal Code). She also contends that the court erred in sustaining Taylor's objections to evidence she submitted in support of her motion.

We conclude that there was no error by the trial court in its denial of the summary judgment motion or in its evidentiary ruling. Accordingly, we will affirm the judgment on the pleadings of November 8, 2023.

## I. PROCEDURAL BACKGROUND[2]

### A. Pleadings

On January 24, 2018, Kravchuk filed an initial complaint against Taylor alleging one claim for breach of written contract. Thereafter, she filed a first amended complaint alleging six causes of action against Taylor, who filed a demurrer and motion to strike. The court sustained the demurrer with leave to amend. Kravchuk amended her pleading, filing a second amended complaint alleging seven causes of action in which she named Taylor as defendant along with eight new defendants.[3] Taylor filed a demurrer to two

---

[2] There have been five prior appeals by Kravchuk of orders/judgments arising out of the same action. In three of those appeals, this court affirmed judgments of dismissals after the respective demurrers to the third amended complaint by defendants Joyce Lee, Taylor Beck, and Olivia Trelles/First American Financial Corporation were sustained without leave to amend. (See *Kravchuk v. Lee* (Jun. 21, 2022, H049558) [nonpub. opn.]; *Kravchuk v. Beck* (Jun. 21, 2022, H049559) [nonpub. opn.].) In the fourth appeal, this court affirmed an order imposing sanctions against Kravchuk in favor of defendant Taylor pursuant to section 128.7. (See *Kravchuk v. Taylor Morrison of California, LLC* (Jun. 27, 2022, H048858) [nonpub. opn.].) And this court affirmed an order granting a special motion to strike the second amended complaint pursuant to section 425.16 (anti-SLAPP) filed by the law firm that had represented Taylor. (See *Kravchuk v. Collinsworth, Specht, Calkins & Giampaoli, LLP* (Jun. 29, 2022, H048857) [nonpub. opn.].) We take judicial notice of these five previously filed opinions. (See *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 73, fn. 3 [appellate court may take judicial notice of its prior unpublished decision].) Where appropriate, we have relied on one or more of these prior opinions in presenting the procedural history herein.

[3] The eight new defendants were three Taylor employees, Taylor Beck, Joyce Lee, and Tina Longo; First American Financial, the escrow agent, and its employee, Olivia Trelles; and James Ganion, Taylor's transactional attorney, and two law firms in which (continued)

3

causes of action, along with a motion to strike the second amended complaint, or, in the alternative, certain portions of that pleading. The court partially sustained Taylor's demurrer and partially granted its motion to strike.

On November 30, 2020, Kravchuk filed her third amended complaint (hereafter, the complaint) against the same nine defendants sued in the second amended complaint. The complaint alleged seven causes of action, all arising out of the abortive sale of the Townhome, and the complaint contained over 200 pages of exhibits. Five of the causes of action were alleged against Taylor, namely, (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) deceit, (4) civil conspiracy, and (5) aiding and abetting deceit.[4] Taylor demurred to the third through fifth causes of action; the trial court overruled the demurrer to the third cause of action for fraud and sustained without leave the demurrer to the claims for civil conspiracy and aiding and abetting.

In her complaint, Kravchuk alleged, among other things, the following facts:

On March 9, 2017, Kravchuk and Taylor entered into the Agreement to purchase the Townhome for $669,745. As alleged in the complaint—although contradicted by the Agreement itself—the Agreement provided that the closing of the transaction was to occur when the certificate of occupancy issued for the Townhome.[5] After repeated attempts by Taylor to obtain a COO were rejected by the City, a COO was issued on January 31, 2018. On November 17, 2017, Taylor's counsel, James Ganion, advised

Ganion was at different times a partner (Collinsworth, Specht, Calkins & Giampaoli, LLP, and Ulich Balmuth Fisher LLP). After motion practice, various appeals, and dismissals, Taylor is the only remaining defendant.

[4] The sixth and seventh causes of action for intentional and negligent interference with economic advantage, respectively, were not alleged against Taylor.

[5] This allegation in Kravchuk's complaint is incorrect. As provided in the Agreement—a copy of which was attached to Kravchuk's complaint—the Closing Date or close of escrow was defined as "following substantial completion of the Home on a date to be specified in a notice to be provided by Seller to Buyer. Substantial completion of the Home shall be deemed to have occurred when a certificate of occupancy (*or its equivalent*) has been issued." (Italics added.)

Kravchuk that she was in default for failing to close escrow, claiming that the Townhome was habitable, the City had "signed off for occupancy on November [9], 2017," a COO had issued, and Taylor "was entitled to extension fees but would waive them if [Kravchuk] close[d] escrow on November 22, 2017."[6] On November 21, Taylor and its employee, Tina Longo, stated that it would begin charging a daily extension fee of $1,000 if Kravchuk failed to conclude the transaction by November 22.

Kravchuk further alleged in the complaint that Taylor wrongfully terminated the Agreement on November 28, 2017, stating that the termination was the result of Kravchuk's failure to close escrow by November 22. Also on November 28, Taylor and its employee, Taylor Beck, sent an e-mail to Kravchuk "with a purported 'notice of cancellation due to buyer default.' " On December 4, 2017, Taylor's attorney, Ganion, responding to Kravchuk's demand for arbitration, rejected the demand, "stating that there was nothing to arbitrate as the escrow was cancelled and the deposit returned." Ganion corresponded on several occasions with Kravchuk in December 2017, advising her that penalties for failing to close escrow were accruing, and that a COO had issued for the Townhome. On December 21, 2017, Ganion demanded that Kravchuk pay full price or Taylor "would sell the [Townhome] to someone else." Kravchuk alleged that she was willing and able to close escrow, but Taylor sold the Townhome to a third party on January 25, 2018, for $832,842, or $163,097 more than the price in the Agreement.

B.     Motion for Summary Judgment

On April 17, 2023, Kravchuk filed a motion for summary judgment under section 437c, in which she sought an order granting summary judgment as to the claims alleged in the complaint against Taylor for breach of written contract, breach of the implied covenant of good faith and fair dealing, and deceit.

---

[6] Kravchuk alleged that on multiple occasions in November 2017 and thereafter, Taylor had falsely claimed that the City had issued a COO.

5

Kravchuk stated in her motion that there were no material facts in the case that were disputed. She indicated that the parties agreed that (1) they had entered into the Agreement; (2) the Agreement required close of escrow upon substantial completion of the Townhome, with substantial completion defined as "when a certificate of occupancy (or its equivalent) has been issued"; (3) Taylor terminated the Agreement on January 16, 2018; (4) prior to termination, Taylor had not received a COO or a temporary certificate of occupancy for the Townhome; and (5) Taylor contended—a contention Kravchuk disputed—that the statement by City building inspector Steven Kroot on his November 9, 2017 inspection report that "all units ok to occupy" was the "equivalent" of a COO for the Townhome. Based upon these undisputed facts, the issue presented in her motion, stated succinctly by Kravchuk, was as follows: "The sole point of contention between the parties concerns a 'question of law': whether the aforementioned inspection notice, containing the 'All units OK to occupy' statement from the City's inspector, fulfills the Contract terms requiring [Taylor] to obtain a 'certificate of occupancy or its equivalent.' This question seeks to determine if the Plaintiff's obligation to close escrow was triggered under the express condition precedent rule, as outlined at ¶¶8(a) and 26 of the Contract."

Taylor opposed Kravchuk's summary judgment motion. Taylor also filed written objections to some of the evidence Kravchuk submitted with her motion. Taylor asserted that it was *Kravchuk*, not Taylor, who had breached the Agreement. Her breach, Taylor claimed, was based upon her failure and refusal to close escrow on November 17, 2017. This was the date selected by Taylor for close of escrow and was eight days after Kroot had indicated in his inspection report that "all units [were] ok to occupy." Instead of completing the sale on November 17, Kravchuk made a series of "groundless demands" upon Taylor, including requests for reimbursement of travel expenses and attorney fees. Taylor did not accede to the demands, but it *did* extend the close of escrow to December 28, 2017. Kravchuk did not close escrow by that date, and Taylor ultimately

6

terminated the Agreement, returning Kravchuk's deposit, on January 17, 2018. Taylor argued that the Agreement, under its plain language, provided that substantial completion of the Townhome, not issuance of a COO, was required to trigger the obligation to close escrow.

After a hearing, the trial court denied Kravchuk's motion for summary judgment. The court held, inter alia, that the Agreement was unambiguous, and that "the relevant Contract language [concerning close of escrow was] objectively straightforward and clear and require[d] no extrinsic evidence—[Kravchuk] was required to close escrow when a COO *or its equivalent* was issued for the subject unit. A final inspection report was issued certifying that her unit could be occupied and [Kravchuk] was provided with a copy of the report by [Taylor]-this report was equivalent to a COO." The court reasoned further: "[T]he operative action is the approval of the building for occupancy; the issuance of a COO is a ministerial act that follows. . . . Put another way, the unit could be occupied without a COO because the inspection process had definitively been concluded—issuing a COO is a procedural formality that did not change the status of the building or the unit [Kravchuk] agreed to purchase." Based upon this reasoning, the court denied summary adjudication of Kravchuk's first cause of action for breach of contract, second cause of action for breach of implied covenant of good faith and fair dealing, and third cause of action for fraud/deceit. The court also reasoned that Kravchuk "[could] not succeed on this [fraud/deceit] claim because [Taylor] did not misrepresent that the Property was habitable given Kroot's signoff off that her unit and others were 'okay to occupy.' [Kravchuk's] claim also fails because she cannot establish that she suffered any damages." Because the court denied summary adjudication of each of the three claims, it denied Kravchuk's motion for summary judgment.

## C.    Judgment on the Pleadings

On September 29, 2023, Taylor filed a motion for judgment on the pleadings.[7] Taylor's motion was based upon the court's prior summary judgment ruling. Taylor asserted: "The Court's ruling on the motion of summary judgment unequivocally confirmed the final building inspection report was the equivalent of a Certificate of Occupancy and there was no breach of contract with Kravchuk by Taylor Morrison. It followed, that without the breach of the contract, there was no breach of the covenant of good faith and fair dealing or deceit. The case is now practically and legally over."

Kravchuk responded by filing a formal statement of "non-opposition to the entry of judgment in favor of the Defendants." She indicated to the trial court that her position was based upon (1) there being no dispute as to the relevant facts, and (2) the court having denied her "motion for summary judgment, stating that the subject property could be legally occupied without a Certificate of Occupancy or a Temporary Certificate of Occupancy from city authorities based on the undisputed facts." Kravchuk also stated that she "disagree[d] with the Court's legal conclusions and intend[ed] to appeal."

On November 8, 2023, the court signed a formal order granting Taylor's motion for judgment on the pleadings and entered judgment in favor of Taylor. Notice of entry of the order and judgment was given on November 9, 2023.

Kravchuk filed a timely notice of appeal from the judgment.

## II.    DISCUSSION

### A.    Applicable Law

Motions for summary judgment and summary adjudication are governed by section 437c. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite

---

[7] On its own motion, this court ordered the appellate record augmented to include Taylor's notice of motion and memorandum of points and authorities in support of its motion for judgment on the pleadings.

8

their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) Summary judgment is appropriate where the "action has no merit or . . . there is no defense to the action or proceeding." (§ 437c, subd. (a)(1).) Therefore, "[s]ummary judgment is proper only if it disposes of the entire lawsuit. [Citations.]" (*All Towing Services v. City of Orange* (2013) 220 Cal.App.4th 946, 954; see also § 437c, subd. (c).)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted.) "[A] plaintiff bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto. [Citation.]" (*Ibid.* at p. 853; see § § 437c, subd. (p)(1).) Further, a plaintiff moving for summary judgment who would thus "bear the burden of proof by a preponderance of evidence at trial . . . must present evidence [through the motion] that would *require* a reasonable trier of fact to find any underlying material fact more likely than not—otherwise, he [or she] would not be entitled to judgment *as a matter of law*, but would have to present his [or her] evidence to a trier of fact." (*Aguilar*, *supra*, at p. 851, original italics.) The existence of a triable issue of material fact is shown "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.)

"In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation]." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) In considering the parties' evidence in connection with a motion for summary judgment, the court "strictly scrutinize[es]" the declarations submitted by the moving party and "liberally constru[es]" those offered by the opposing party, and it "resolv[es] any evidentiary doubts or ambiguities in [the opposing party's] favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768; see also *Aguilar*, *supra*, at p. 843.)

9

But "[o]nly *admissible evidence* is liberally construed in deciding whether there is a triable issue." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761, original italics; see also *Hayman v. Block* (1986) 176 Cal.App.3d 629, 643 [in ruling on a summary judgment motion, "the court is bound to consider the competency of the evidence presented"].) "Further, an issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions' [citation], or mere possibilities [citation]." (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196-197.) Thus, although the opposing party may rely upon inferences, "those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork. [Citation.]" (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.)

Since summary judgment motions involve pure questions of law, we review independently the granting of summary judgment to ascertain whether there is a triable issue of material fact justifying the reinstatement of the action. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 (*Wiener*).) In doing so, we "consider[] all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 (*Kids' Universe*).)

## B.     No Error by the Trial Court

Kravchuk contends that the trial court's reasoning was flawed in its denial of her motion for summary judgment. She also asserts that the court erred in sustaining

Taylor's evidentiary objections to certain evidence she proffered in her motion.[8]

### 1. *Denial of Summary Judgment Was Proper*

Kravchuk acknowledged in her motion that the Agreement provided that close of escrow would take place upon issuance of a COO or its equivalent. She also agreed that city inspector Kroot stated "all units ok to occupy" in his November 9, 2017 inspection report. She asserted, however, that Kroot's statement did not constitute the equivalent of a COO which triggered a duty to move forward with close of escrow on the purchase of the Townhome. In support of this argument, Kravchuk cited to provisions of the Municipal Code, including section 24.02.610.

As noted, the relevant language of the Agreement, contained in paragraph 8, subsection (a), reads as follows: "**Closing Date/Close of Escrow:** Unless earlier terminated or extended by Seller as provided herein, the 'Closing Date' for this transaction shall occur following substantial completion of the Home on a date to be specified in a notice to be provided by Seller to Buyer. Substantial completion of the Home shall be deemed to have occurred when a certificate of occupancy (or its equivalent) has been issued." Thereafter, the Seller was required to give at least three days' notice to Buyer of the date that the transaction would close. Subsection (b) of paragraph 8 of the Agreement provided (in bold capital letters) as follows: "Buyer does not have the right to extend, delay or postpone the Closing Date. In the event that Buyer is unable or unwilling to close escrow in accordance with this section 8, Buyer shall be deemed to be in default . . . ." In the event of such default, under the terms of the Agreement, Taylor could elect to terminate the Agreement, retaining the Buyer's deposit

---

[8] Kravchuk does not assert a procedural challenge to the court's entry of judgment on the pleadings. This is consistent with her stipulation below that, subject to her reserving the right to challenge on appeal the correctness of the order denying her motion for summary judgment, she did not oppose Taylor's motion for judgment on the pleadings.

if the parties initialed the liquidated damages provision,[9] or extend escrow close with the Buyer paying a daily extension fee of $1,000.

As the parties agree, the central issue is whether the "equivalent" of the issuance of a COO for unit 1 occurred on November 9, 2017, through Kroot's inspection report that "all units ok to occupy." In that inspection notice, Kroot—as he confirmed in his deposition—inspected all units in the Project on November 9, gave his approval that "all units [were] ok to occupy," and gave final sign-off for the electrical, plumbing, mechanical, and building on the site.[10] In one exchange between Taylor's counsel and the witness, Kroot testified: "Q. And by signing off, all units in that particular building were okay to occupy? [¶] A. Yes. [¶] Q. And by okay to occupy, that means owners or tenants could have moved into the unit? [¶] A. Yes." During further questioning at his deposition by Kravchuk's counsel, Kroot testified: "Q. So that would have been—you're basically saying in this document [the November 9, 2017 inspection report] that 1 through 6 units were ready to be occupied? [¶] A. Yes. [¶] Q. . . . And the fact that you indicated that all the units were ready to occupy, does that mean that the fire department had signed off? [¶] A. Yes."

When questioned about certificates of occupancy, Kroot explained that a COO would not have been issued for Kravchuk's individual Townhome, unit 1. Rather, "[c]ertificates of occupancy are generated for the complete building, not for unit by unit." Upon further examination by Kravchuk's counsel, Kroot elaborated: "Q. . . . How does a developer of condominiums in San Jose during 2017—would they typically go about getting a certificate of occupancy issued? [¶] A. On a project like this, when I completed

---

[9] In this instance, both parties initialed the liquidated damages provision.

[10] Kroot testified further that he had inspected unit 1 (the Townhome under contract with Kravchuk) and unit 2 on November 7, 2017, for approximately 45 minutes. Kroot noted that "unit 1 ok," but that a handrail for unit 2 required correction. After a later inspection, Kroot generated the report signed November 9, 2017, indicating that the handrail issue for unit 2 had been corrected and that "all units [were] ok to occupy."

the final inspection for the entire building I would then issue one. [¶] Q. But because a certificate of occupancy hasn't been issued for the entire building, doesn't mean that the units can't be occupied? [¶] A. Yes. [¶] Q. So the units can be occupied? [¶] A. Yes. [¶] Q. Even though there's no certificate of occupancy for the entire building? [¶] A. Yes."[11]

Thus, the undisputed evidence from Kroot's deposition testimony was that he had completed the final inspection of the six units in the Project and had given his approval that "all units [were] ok to occupy," meaning that all units "were ready to be occupied." This included unit 1, the Townhome governed by the Taylor-Kravchuk Agreement. Further, Kroot's undisputed testimony was that certificates of occupancy were not issued for each individual unit in such a development, but that he would issue a COO for the Project after completion of final inspection for the entire building. Therefore, Kroot's final approval of all units for occupancy, which would result in his subsequent issuance of a COO for the entire building, was the "equivalent" of issuance of a COO for a single-family dwelling, i.e., unit 1.

Municipal Code section 24.02.630 provides that "[a]fter the building official inspects the building or structure and finds no violations of the provisions of this title or other laws, the building official *shall* issue a certificate of occupancy . . . ." (Italics added.) "The word 'shall' indicates a mandatory or ministerial duty." (*Lazan v. County of Riverside* (2006) 140 Cal.App.4th 453, 460; see also *Move Eden Housing v. City of Livermore* (2024) 100 Cal.App.5th 263, 275 [refusal by City Clerk to process referendum petition, notwithstanding law that "directs that the clerk 'shall accept the [compliant] petition for filing' . . . [was a] "violat[ion of] her duties under the Elections Code"].) " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own

---

[11] Significantly, Kravchuk did not provide any evidence below contradicting or in any way questioning any of Kroot's testimony.

13

judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.' [Citation.]" (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 (*Kavanaugh*).)

Here, applying Municipal Code section 24.02.630, and based upon Kroot's undisputed testimony, his sign-off in his final inspection report that all units in the Project, including unit 1, were "ok to occupy," and were "ready to be occupied," meant that the "building official" was required to issue a COO for the entire building. (See also *Kavanaugh, supra*, 29 Cal.4th at p. 916.)

*Thompson v. City of Lake Elsinore* (1993) 18 Cal.App.4th 49 (*Thompson*) was discussed at some length and relied on by Taylor in its opposition and by the trial court in its order denying summary judgment. In *Thompson*, the plaintiff, owner of commercial property, sued the City of Lake Elsinore (city) and others after the city—after having delayed but ultimately having issued a building permit—provided a " 'Final Inspection Okay' " for the property but then refused to issue a COO. (*Id.* at p. 53.) The plaintiff alleged, among other claims, a cause of action based upon the failure to exercise a mandatory duty. (*Ibid.*) The defendants demurred to the third amended complaint on the basis that the claims were barred by statutory immunity, which demurrer was sustained without leave to amend. (*Id.* at pp. 52, 53-54.) The appellate court reversed in part and affirmed as to certain causes of action. (*Id.* at pp. 63-64.)

After first rejecting the plaintiff's claims based upon delay in issuance of a building permit, concluding that the issuance of building permits is a discretionary act subject to governmental immunity (*Thompson, supra*, 18 Cal.App.4th at pp. 55-56), the appellate court addressed whether the same was true with respect to the issuance of a COO (*id.* at pp. 56-58). The *Thompson* court contrasted the issuance of a COO with the discretionary act of issuing a building permit, observing: "[T]he discretion to issue a building permit at all is much broader than the discretion which must be exercised in determining whether to issue a certificate of occupancy. Once the building permit has

14

*been issued*, it cannot be de facto revoked by the simple expedient of never issuing the certificate of occupancy. . . . [But to obtain a COO, t]he building permit holder must first satisfy the building official, in the exercise of official discretion, that the project meets the requirements contained in the applicable statutes, codes, and regulations, and in the permit itself." (*Id.* at pp. 57-58.)

The appellate court noted that provisions of the Uniform Building Code (UBC) had been adopted by city ordinance. (*Thompson*, *supra*, 18 Cal.App.4th at pp. 55, 57.) The court, relying on UBC language similar to that found here in Municipal Code section 24.02.630, observed: "Section 306(c) of the [UBC] provides in pertinent part: '(c) Certificate Issued. After final inspection when it is found that the building or structure complies with the provisions of this Code, the Building Official *shall* issue a Certificate of Occupancy.' [Citation.]" (*Thompson*, *supra*, at p. 58, italics added.)[12] The court thus concluded that the city had *already approved the completed building and thus retained no discretion to withhold issuing a COO*: "[U]nder sections 306(c) and 307(c) of the [UBC], the building official had *already exercised its discretion*; even if the building official is immune for its discretionary act *in determining whether or not* the certificate should be issued . . . , the building official had in fact—by its 'Final Inspection Okay'—already actually approved owner's building. . . . [T]he building official retained no further discretion to withhold the certificate of occupancy. [Citations.]" (*Id.* at p. 58.)[13]

---

[12] The *Thompson* court also relied on UBC 307 concerning COO's, which contained language similar to Municipal Code section 24.02.630 here. The language of UBC 307 read in part: " '(c) Certificate Issued. After the final inspection when it is found that the building or structure complies with the provisions of this code and other laws which are enforced by the code enforcement agency, the building official *shall* issue the Certificate of Occupancy . . . .' " (*Thompson*, *supra*, 18 Cal.App.4th at p. 56, fn. 9, original italics omitted, italics added.)

[13] *Thompson* was cited with approval on this point by the California Supreme Court. (See *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 502; see also *id.* at p. 509, conc. & dis. opn., Mosk, J.)

Kravchuk argues that the court's reliance upon *Thompson* was "misplaced, as it pertains to a different context with distinct parties, ordinances for [a] different city . . . , and legal questions.  [*Sic.*]"  We disagree and find that *Thompson* supports the conclusion here that Kroot's statement in his November 9, 2017 final inspection report that all units in the Project, including unit 1, were "ok to occupy"—like the statement, " 'Final Inspection Okay,' " by the city official in *Thompson*, *supra*, 18 Cal.App.4th at page 53— meant that (1) Kroot's approval was the functional equivalent of issuance of a COO for a single family dwelling; and (2) the City had "already actually approved [all units in the Project, including unit 1]" such that the City "retained no further discretion to withhold the certificate of occupancy [for the entire Project].  [Citations.]"  (*Id.* at p. 58.)

Kravchuk also argues that Municipal Code section 24.02.610 precludes a finding that the final inspection report by Kroot was the equivalent of the issuance of COO.  Kravchuk relies on the following language of Municipal Code section 24.02.610: "A. Buildings or structures shall not be used or occupied nor shall a change in the existing occupancy classification of a building or structure or portion thereof be made until the building official has issued a certificate of occupancy therefor as provided herein.  [¶] . . . [¶]  D. Certificates presuming to give authority to violate or cancel the provisions of this title or of other city ordinances shall not be valid."  She argues that subsection (D) of Municipal Code section 24-02-610 "render[ed] invalid any approval that violates city ordinances related to occupancy and building codes."  Although Kravchuk's argument in the abstract might have some facial appeal, it ignores other COO provisions in Title 24, Part 6 of the Municipal Code.  Specifically, her contention fails to consider Municipal Code section 24.02.630, providing that "[a]fter the building official inspects the building or structure and finds no violations of the provisions of this title or other laws, the building official *shall* issue a certificate of occupancy. . . ."  (Italics added.)  We conclude that the City was *required* to issue a COO after the City, specifically Kroot, on November 9, 2017, found "no violations" of Title 24 of the

16

Municipal Code; the City had, in fact, already approved the Townhome. (See *Thompson*, *supra*, 18 Cal.App.4th at p. 58.) Therefore, Kroot's final inspection report—in effect a de facto COO—did not "violate or cancel the provisions of this title [24] or of other city ordinances" within the meaning of Municipal Code section 24.02.610(D).[14]

We agree with the trial court that Kroot's inspection report was the equivalent of a COO for purposes of establishing the "Closing Date" for the purchase and sale of unit 1 under the Agreement. Accordingly, the trial court did not err in denying Kravchuk's motion for summary judgment based upon the conclusion that she could not establish that Taylor breached the Agreement by requiring that she close escrow on November 17, 2017, eight days after the equivalent of the issuance of a COO occurred through Kroot's final inspection report that "all units [were] ok to occupy."

### 2. *No Error in Sustaining Taylor's Evidentiary Objections*

In opposing the summary judgment motion, Taylor filed seven written objections to evidence that had been submitted by Kravchuk. Most of Taylor's objections were that the proffered evidence was inadmissible hearsay. The trial court sustained each of these objections.

Kravchuk, in cursory fashion, contests the trial court's ruling, stating that she "challenges the trial court's decision to sustain the Respondent's evidentiary objections." Kravchuk does not elaborate on this contention, other than to state that (1) "any ambiguities" concerning language in the Agreement defining substantial completion as being when a "certificate of occupancy (or its equivalent) has been issued" should be resolved against Taylor as the draftsman; and (2) extrinsic evidence showed that the

---

[14] Kravchuk makes additional arguments challenging the reasoning of the trial court in its order denying summary judgment. Our task is to independently review the summary judgment order. (*Wiener, supra*, 32 Cal.4th at p. 1142.) Accordingly, we review the ruling of the trial court, not its rationale. (*Kids' Universe, supra*, 95 Cal.App.4th at p. 878.)

17

parties had a "shared understanding" that Taylor needed to obtain a COO before Kravchuk was obligated to close escrow.

Kravchuk presents no cogent argument, with accompanying legal authority, to support her claim of error. Her appellate argument is forfeited or abandoned. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [an appellate court may treat as forfeited any legal argument for which there is no citation of authorities for the point made]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [conclusory, undeveloped appellate argument deemed abandoned.)

Even if we were to address Kravchuk's contention that the trial court erred in sustaining the evidentiary objections, her argument fails. Her argument is forfeited for two related reasons. First, Kravchuk in her motion did not contend that the language in the Agreement concerning close of escrow was ambiguous. Her failure to raise the contention precludes her from raising it here. (See *Park v. NMSI, Inc.* (2023) 96 Cal.App.5th 346, 358 [appellant's failure to raise contract interpretation issue below, beyond a generalized assertion, resulted in its forfeiture on appeal].) Second, Kravchuk failed to make the argument below—as she apparently contends here—that the subject evidence was admissible as extrinsic evidence to interpret the Agreement, and thus has forfeited the argument for this reason as well. (See *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [generally, " '[a] party is precluded from urging on appeal any point not raised in the trial court' "].) Moreover, even if the evidence to which Taylor objected was appropriate to interpret an ambiguity in the Agreement, the evidence was nonetheless inadmissible: The trial court concluded that the relevant language of the Agreement concerning the "Closing Date" was "objectively straightforward and clear and require[d] no extrinsic evidence." Whether we review the trial court's evidentiary ruling for abuse

18

of discretion or independently,[15] Kravchuk has failed to demonstrate the trial court erred. Further, Kravchuk has not shown that any assumed error was "a 'miscarriage of justice' " warranting reversal. (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480.)

## III. DISPOSITION

The November 8, 2023 judgment on the pleadings is affirmed.

---

[15] There is a split of authority concerning the applicable standard for reviewing evidentiary rulings in summary judgment motions; the majority of appellate courts have held that the abuse of discretion standard applies. (See *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946 & fn. 3.)

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____
GROVER, J.

_____
LIE, J.

***Kravchuk v. Taylor Morrison of California, LLC***
**H051625**